UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No.: 3:23-CR-87-TAV-JEM-5 |
| WAYNARD Q. WINBUSH, | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Jill E. McCook on March 19, 2025 [Doc. 214]. The R&R addresses defendant's Motion to Dismiss for Violation of Interstate Agreement on Detainers [Doc. 176], which defendant supplemented [Doc. 199]. The government responded [Doc. 185], and Judge McCook held a motion hearing [Docs. 200, 210]. Judge McCook then issued the R&R [Doc. 214], recommending that the Court deny defendant's Motion to Dismiss for Violation of Interstate Agreement on Detainers [Doc. 176]. Defendant has timely filed objections to the R&R [Doc. 216], and the government responded [Doc. 223]. Thus, the matter is now ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons below, the Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 214] and **DENIES** defendant's Motion to Dismiss for Violation of Interstate Agreement on Detainers [Docs. 176, 199].

## I. Background

The Court presumes familiarity with the background set forth in the R&R [*See* Doc. 214, pp. 2–7]. The government has not lodged an objection to the background set forth in the R&R. While defendant submits his own recitation of the background of this case, such recitation does not appear to conflict with the R&R's description, making only additions [Doc. 216, pp. 2–7]. Therefore, the Court reincorporates this portion of the R&R below:

> In September 2016, Defendant received a twenty-three-year sentence of incarceration for his convictions in Knox County Criminal Court for one count of conspiracy to possess Schedule I drugs with intent to sell in a school zone and one count of possession of Schedule II drugs with intent to sell in a school zone. On December 22, 2022, Governor Bill Lee commuted Defendant's sentence and declared him eligible for parole consideration. On March 2, 2023, prior to a parole hearing on his 2016 convictions, the State of Tennessee indicted Defendant for two counts of conspiracy to possess one hundred fifty (150) grams or more of a substance containing fentanyl with intent to deliver from May 9 through 21, 2022 ("the 2023 state case").
>
> On August 21, 2024, the Grand Jury issued a Superseding Indictment, charging Antoine Winbush, Tarius Myers, and Defendant with conspiracy to distribute fentanyl and heroin from November 1, 2021, to on or about May 20, 2022. An arrest warrant for Defendant issued the following day. At the time of the Superseding Indictment, the trial date for Defendants Antoine Winbush and Myers, who were charged in the original Indictment, was October 1, 2024.
>
> On August 29, 2024, the Federal Bureau of Investigation ("FBI") sent a "Detainer Against Unsentenced Prisoner" ("the FBI detainer") for Defendant Waynard Winbush to the KSCO, asking the KCSO to notify the FBI if Defendant was to be released from the custody of the KCSO. The FBI detainer states that the "notice and speedy tr[ia]l requirements of the Interstate Agreement on Detainers Act do **NOT** apply to this DETAINER because the subject is not currently serving a sentence of imprisonment." The FBI detainer directs that the recipient acknowledge receipt by signing, dating, and mailing a copy to the FBI. It also states that "[i]f the subject is transferred from your custody to another detention facility, we request that you forward our DETAINER to said facility at the time of transfer and advise

2

this office as soon as possible." KCSO Captain Ayers acknowledged receipt of the FBI detainer on August 29, 2024.

On September 6, 2024, the Knox County Criminal Court dismissed Defendant's pending 2023 state charges, noting that Defendant had been "federally indicted on [the] same charges."

On September 9, 2024, the Government petitioned the Court for a writ of *habeas corpus ad prosequendum* for Defendant, directing the Sherriff of the Knox County Detention Center to bring Defendant for an initial appearance in this Court on September 17, 2024. The undersigned granted the petition, and a writ issued on September 10, 2024, but was returned unexecuted. On September 11, 2024, the Government again moved for a writ of *habeas corpus ad prosequendum* for Defendant, directing the "Warden at the Knox County Detention Center for TDOC" to bring Defendant for an initial appearance in this court on September 17, 2024. The following day, the undersigned again granted the motion, the writ issued, and it was again returned unexecuted. On September 17, 2024, the Government filed a third motion for a writ of *habeas corpus ad prosequendum* for Defendant, directing the "Warden at the Morgan County Correctional Complex for TDOC" to bring Defendant for an initial appearance in this Court on October 2, 2024. The undersigned again granted the motion, and the Clerk of Court issued a writ to the warden of the TDOC's Morgan County Correctional Complex ("MCCC") for Defendant to appear for an initial appearance in this Court on October 2, 2024.

On September 17, 2024, the undersigned arraigned Antoine Winbush and Tarius Myers on the Superseding Indictment. At this hearing, counsel for Antoine Winbush moved to continue the trial, and neither Defendant Myers nor the Government objected to a continuance. The undersigned granted the motion to continue and instructed the parties that Chambers would contact counsel to schedule the new trial date and other deadlines.

On September 18, 2024, the Court received a pro se notice by Defendant requesting disposition of his federal charges pursuant to Article III of the IAD and listing his place of imprisonment as the "Knox County Jail." Although received on September 18, this notice was not docketed until September 20, 2024.

Defendant was arrested in Knoxville, Tennessee, on September 19, 2024, when the United States Marshals Service ("USMS") assumed custody of Defendant from MCCC. On that day, Defendant appeared before the undersigned for an initial appearance and arraignment. The undersigned

3

Case 3:23-cr-00087-TAV-JEM    Document 254    Filed 06/24/25    Page 3 of 17
PageID #: 1276

appointed Attorney Nate Evans to represent Defendant. The recording of this hearing reveals that, at the conclusion of the hearing, the undersigned informed Defendant and Mr. Evans that the Court had granted a codefendant's motion to continue the trial and would include Mr. Evans on the email scheduling the new trial date.

On September 23, 2024, a member of the undersigned's staff emailed counsel for all parties with potential trial dates of February 11, 18, and 25, 2025. On September 26, 2024, Mr. Evans responded that he was available on both February 11 and 25 but "due to other obligations this week, I will not be able to discuss this with Mr. Winbush until tomorrow" and that Mr. Evans would "follow-up to confirm that he consents to this extension and understands his rights with respect to a speedy trial." On September 30, 2024, Mr. Evans responded, "I can confirm that my client is aware of his rights and consents to a continuance." The next day, the undersigned entered a Memorandum and Order continuing the trial to February 11, 2025[,] finding that the continuance furthered the ends of justice; and setting a new schedule in the case.

[Doc. 214, pp. 2–6 (internal citations and footnotes omitted)(emphasis in original)].

As recounted in his objection to the R&R, defendant filed a *pro se* notice, post-marked October 1, 2024, that he was not waiving his 120-day time limit under the Interstate Agreement on Detainers ("IAD") [Doc. 128].[1] On October 11, 2024, defendant filed a *pro se* motion to substitute counsel, providing in part that his counsel was in conflict with him regarding the IAD [Doc. 131, p. 3]. On October 25, 2024, defendant filed another *pro se* motion, arguing that the trial date was outside of the 120-day time limit under the IAD and requesting that the Court move his trial date to inside this 120-day time limit [Doc. 134]. A few days later, defendant's attorney, Mr. Evans, filed a motion to withdraw [Doc. 136]. A hearing was held on November 13, 2024, wherein Donny Young was substituted as counsel for defendant [Doc. 140].

---

[1] This notice was docketed with the Court on October 4, 2024.

On January 3, 2025, defendant filed a Motion to Dismiss for Violation of Interstate Agreement on Detainers [Doc. 176], in which defendant argued that he did not agree to a continuance outside the 120 days required by the IAD, and that the continuance was not granted in open court with defendant or his attorney present. In response, the government contends that the IAD is not implicated in this case, and alternatively, that defendant consented to a continuance beyond the 120-day period [Doc. 185]. In his supplement [Doc. 199], defendant asserted that the IAD was triggered by the FBI detainer [Doc. 199-1], meaning the IAD clock began on September 19, 2024, with the arrival of defendant in federal court and expired on January 17, 2025. The expiry of the IAD time period, defendant argues, coupled with the unreasonable delays in the identical state court litigation preceding the instant case, supports dismissal of this case with prejudice [Doc. 199].

Upon consideration of the record and the parties' arguments, Judge McCook has recommended that defendant's motion to dismiss [Doc. 176] be denied [Doc. 214]. Judge McCook concluded that the IAD does not apply in defendant's case, and if it does, "the February 11, 2025, trial date did not violate the speedy trial provisions of the IAD" [*Id.* at 9].

## II.    Standard of Review

The Court reviews *de novo* those portions of the R&R to which a defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers defendant's motion to dismiss and supplement, the government's response, the R&R, defendant's objections, and the government's response to those objections, all in light of the applicable law.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute"). Each objection to a magistrate judge's recommendation should describe how the analysis is wrong, why it was wrong, and how *de novo* review warrants a different result on a particular issue. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A general objection that merely restates an argument previously presented or simply voices a disagreement with a magistrate judge's suggested resolution "has the same effect[] as would a failure to object." *Austin v. Comm'r of Soc. Sec.*, No. 1:19-cv-2380, 2021 WL 1540389, at *4 (N.D. Ohio, Apr. 19, 2021) (citation omitted); *see also United States v. Dawson*, No. 4:19-cr-206, 2020 WL 109137, at *1 (N.D. Ohio, Jan. 9, 2020) (citations omitted) ("[T]he Court is under no obligation to review *de novo* objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs.").

### III. Analysis

Defendant makes two overall objections to the R&R. First, defendant objects to the R&R's finding that the IAD does not apply to defendant, arguing that defendant was serving a state sentence at the time the FBI detainer was lodged and thus, his case is distinguishable from those cited in the R&R [Doc. 216, pp. 8–9]. Second, defendant objects to the R&R's finding that he waived his rights to a timely trial [*Id.* at 11–13]. Specifically, defendant contends that the Court did not grant the continuance at issue in

6

open court, that codefendant Antoine Winbush did not provide good cause for the continuance outside the IAD 120-day limit, and that defendant persistently invoked his right to a speedy trial under IAD [*Id.*].

A.     **Application of the IAD**

As stated above, defendant objects to the R&R's conclusion that the IAD does not apply in his case [Doc. 216, pp. 7–11]. Specifically, defendant objects to his categorization as a "pretrial detainee" at the time the FBI detainer was lodged, August 29, 2024, arguing that he was a prisoner serving a state sentence [*Id.* at 9–11; *see* Doc. 214, p. 12]. In support of his contention regarding his "categorization," defendant asserts that his case is distinguishable from those cited by the R&R [Doc. 216, p. 9]. *See United States v. Roberts*, 548 F.2d 665 (6th Cir. 1977); *United States v. Muhammed,* 948 F.2d 1449 (6th Cir. 1991); *United States v. Culbertson*, No. 05-80058, 2007 WL 201052 (E.D. Mich. Jan. 24, 2007).

First, defendant states that the *Roberts* defendant was deemed to not be serving a term of imprisonment because he was being held on pending state charges after being unable to make bail [*Id.* at 9–10 (citing 548 F.2d at 670)]. Defendant states that the *Roberts* court "made it clear that [the defendant] had not been tried or sentenced by a New York Court" [*Id.* at 10 (citing 548 F.2d at 670)]. Turning to *Muhammed*, defendant states that in that case, the defendant was not serving a state sentence at the time federal charges were brought [*Id.* (citing 948 F.2d at 1449)]. Rather, the defendant was arrested on state charges and being held in county jail awaiting trial when the federal arrest warrant was issued [*Id.* (citing 948 F.2d at 1453)]. Lastly, regarding *Culbertson*, defendant states that the district court there held that "the IAD did not apply to parolees awaiting adjudication of a parole

7

Case 3:23-cr-00087-TAV-JEM | Document 254 | Filed 06/24/25 | Page 7 of 17
PageID #: 1280

violation because parolees, like pretrial detainees, are not serving a term of imprisonment" [*Id.* (citing 2007 WL 201052, at \*5) (emphasis in original)].

Considering all this, defendant contends that his rights attached the day he began serving his state sentence and have remained during the duration of such sentence [*Id.* (citation omitted)]. Further, defendant states that the above cited decisions reflect the IAD's purpose of protecting defendants sentenced in one jurisdiction to a term of imprisonment from "having their programs of treatment and rehabilitation obstructed by absences in connection with successive proceedings related to pending charges in another jurisdiction" [*Id.* (citation omitted)]. And additionally, the Sixth Circuit has recognized that the IAD is meant "to protect detainees from being hampered in their quest for [] parole" [*Id.* (citation omitted)]. Ultimately, defendant argues that his presence in federal court has interrupted his state prison sentence, the Tennessee Department of Corrections programs he was participating in, and his efforts for parole [*Id.* at 11].

In response, the government asserts that the R&R properly found that defendant was in state custody on pending state charges when the FBI detainer was lodged, and as such, that the IAD does not apply to defendant [Doc. 223, p. 3].

The Court first notes that defendant previously argued that he was a prisoner serving a state sentence when the FBI detainer was lodged at the hearing held by Judge McCook on February 11, 2025 [Doc. 218, pp. 4–5 (stating that the FBI detainer was incorrect in classifying defendant as an un-sentenced prisoner, and in fact, defendant had been "sentenced and was awaiting a parole hearing on a sentence when [the FBI detainer] was issued")]. Additionally, while the Court agrees with defendant that his case is factually

8

distinct from those cited by the R&R, as would be the situation in most cases, the Court finds defendant's issue with the cases cited by the R&R to pertain to his above contention—that he was a sentenced state prisoner at the time the detainer was lodged, not a pretrial detainee. Despite the improper nature of defendant's blanket restatement regarding his confinement "categorization," *see Dawson*, 2020 WL 109137, at *1, the Court does find that defendant raises a new argument in insisting that, once he became a sentenced state prisoner, particular rights attached that have "remained" while he has been in confinement [*See* Doc. 216, p. 10]. The Court recognizes that defendant's contention raises the question of whether a person in custody can sustain multiple "categorizations" and how those categorizations may affect the application of the IAD, specifically if one of the statuses held is of a state sentenced prisoner.

However, for the reasons contained *infra*, the Court find it need not address such question as the outcome remains the same regardless of whether the IAD applies. Therefore, defendant's objection to the R&R's conclusion that the IAD does not apply to his case is **OVERRULED**.

  **B.** **Timeliness of Trial Date**

Defendant also objects to the R&R's findings that there was no violation of the speedy trial provision of Article IV(c), and that he waived his rights to a timely trial [Doc. 216, pp. 11–13]. Defendant first asserts that, despite the requirements of Article IV(c) of the IAD, the continuance at issue in this case was not granted in "open court" and neither he nor his counsel were present in court on the day the Court granted such continuance [*Id.* at 12]. Second, defendant contends that there is no evidence in the record that his

9

codefendant Antoine Winbush provided good cause to continue the case outside the IAD's 120-day time restriction [*Id.*]. Lastly, defendant argues that the record "clearly shows that from the time he was informed of the Federal Indictment and detainer lodged against him, [he] has persistently requested that he be given a speedy trial within the 120[-day] time limit" [*Id.*].

In response, the government states that the R&R properly found that the agreed upon trial date, outside of the IAD's 120-day window, did not violate the IAD [Doc. 223, p. 3].

i. **Open Court and Presence of Defendant or Counsel**

Beginning with defendant's arguments that the continuance in this case runs afoul of the IAD because it was not granted in "open court" while either he or his counsel were present [Doc. 216, p. 12], the Court notes that these arguments are reiterations of ones previously raised in briefings and at the February 11, 2025, hearing [*See* Doc. 176, p. 3 ("The Defendant submits that it is obvious that the continuance was not granted in open court with 'the prisoner or his counsel present.'"); Doc. 199, p. 3 ("It is clear that neither the prisoner [defendant] nor his counsel were present on September 17, 2024[,] at the time Antoine Winbush made his oral motion to continue trial or on October 1, 2024[,] at the time . . . the court issued its Memorandum and Order (Doc. 127) continuing this case."); Doc. 218, p. 6 ("[T]he technical requirement of the Act is that we can move outside the 120 days for good cause shown in open court with the prisoner or his counsel being present, and there is no question that didn't happen. Mr. Winbush's counsel wasn't present . . . . Mr. Winbush was not present in court . . . and so, the – the statute has not

10

been complied with technically.")].  Such objection is, therefore, improper. *See Dawson*, 2020 WL 109137, at *1.

In support of his argument, defendant also states, referring to the "Court's informal process of circulating [trial] dates via e-mail[,]" that "the Sixth Circuit has found this sort of informal practice in direct conflict with . . . the IAD, holding that [the] IAD is unequivocal in its language and that the term 'open court' means with a judge on the bench" [Doc. 216, pp. 11–12 (citing *Stroble v. Anderson*, 587 F.2d 830, 837–39 (6th Cir. 1978))]. But the R&R addressed this very contention:

> Although the Sixth Circuit has previously determined that "open court" for purposes of the IAD means a formal proceeding "with a judge on the bench," this ruling was in response to continuances granted by the clerk of court and ultimately approved by a judge in the absence of defense counsel. *Stroble v. Anderson*, 587 F.2d 830, 839 (6th Cir. 1978). As observed by the Fourth and Ninth Circuits, *Stroble* was responding to the very ex parte and sua sponte proceedings that the "open court" language was meant to prevent. *Snyder*, 960 F.2d at 1457; *Odom*, 674 F.2d at 231. In contrast, the selection of the February 11, 2025[,] trial date in this case occurred with full participation of all parties and after notice in open court by the undersigned that the Court previously granted a continuance. Counsel for all parties participated in an email with Chamber's staff, and the Court approved the new trial date in a publicly filed Memorandum and Order, in which it made speedy trial findings. Accordingly, the manner of the selection of the February 11, 2025[,] trial date does not violate the IAD.

[Doc. 214, p. 19]. *See also United States v. Fraught*, No. 21-6123, 2022 WL 2813240, at *9 (6th Cir. July 19, 2022) (citing *New York v. Hill*, 528 U.S. 110, 115–16 (2000)) (emphasis in original) (stating that the Supreme Court in *Hill* rejected the view that the IAD's "explicit standards for granting continuances (showing good cause in open court) barred the parties from agreeing to them in other ways" and that rather, "those standards applied (and permitted continuances) in situations when the defendant *objected* to them.").

11

Given the above, defendant's objections here are **OVERRULED**.

**ii.     Good Cause and Length of Continuance**

Next, citing to the Court's Memorandum and Order [Doc. 127], defendant asserts that there is "no evidence in the record that Antoine Winbush provided good cause to continue this matter outside of the IAD's 120[-day] time restriction" [Doc. 216, p. 12].[2] Defendant emphasizes that, at the time of Antoine Winbush's motion, "the case against Antoine Winbush and Tarius Myers had been pending for fourteen (14) months[,]" and Antoine Winbush "acknowledged that his plea agreement would likely be filed shortly" [*Id.*]. Additionally, defendant states, "[t]he Superseding Indictment did not add any new charges to either of the remaining Co-Defendants" [*Id.*].

As stated in the R&R, the fourth component of a continuance under Article IV(c) is that "the movant must demonstrate good cause in open court[,]" and the fifth component is that "the length of the continuance must be reasonable or necessary" [*See* Doc. 214, p. 18 (quoting *Crozier*, 259 F.3d at 514)]. Beginning with the fourth component, and as previously discussed,[3] on September 17, 2024, during an arraignment hearing on the Superseding Indictment in this case, codefendant Antoine Winbush moved to continue the trial [*See* Doc. 114]. In support of his oral motion, codefendant Antoine Winbush cited the addition of defendant to the Superseding Indictment and also his belief that a "resolution

---

[2]   The Court notes that defendant appears to merge the last two components of a continuance under Article IV(c), making it appear that the movant for a continuance must provide good cause to justify the *length* of the continuance. However, the demonstration of good cause to grant a continuance and the length of such continuance being reasonable or necessary appear as two, distinct components. *See United States v. Crozier*, 259 F.3d 503, 514 (6th Cir. 2001).

[3]   *See supra* Section I.

would likely be filed shortly" for himself [*See* Doc. 127, p. 1]. Notably, the Superseding Indictment was filed on August 21, 2024 [Doc. 102], and at the time of Antoine Winbush's oral motion, the trial date was set for October 1, 2024, just two weeks away [*See* Doc. 83].

Setting aside for now the fifth component regarding the length of the continuance, the Court finds that codefendant Antoine Winbush, the movant, demonstrated good cause for the Court to grant a continuance in general. First, as emphasized by Antoine Winbush in his oral motion [*see* Doc. 127, p. 1], defendant was newly added to the case by the Superseding Indictment [Doc. 102] and had not even been arraigned at the time of the oral motion, but the trial, as mentioned above, was set to proceed on October 1, 2024 [Doc. 83]. A continuance was certainly warranted given defendant's recent addition to the case and the dwindling weeks before trial was to begin. *See also* 18 U.S.C. § 3161(h)(6) (stating that, under the Speedy Trial Act, excludable delay includes a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."). But codefendant Antoine Winbush established good cause beyond that as well, requesting additional time to continue negotiating a resolution [Doc. 127, p. 1]. Therefore, the Court would **OVERRULE** defendant's objection to the extent he argues that the fourth component of a continuance under Article IV(c) was not met here.

Moving on to the fifth component, that the length of the continuance be reasonable or necessary, *see Crozier*, 259 F.3d at 514, the Court begins by turning back to codefendant Antoine Winbush's statement regarding a "resolution" at the September 17, 2024, arraignment hearing [Doc. 127, p. 1]. Specifically, in its Memorandum and Opinion, the

13

Court recognized that Antoine Winbush's statement was not definitive; rather, he couched the possibility of a resolution as "likely" [*Id.*]  In so recognizing the ever-present chance that a resolution would not be reached, the Court stated, "if negotiations are not fruitful," counsel will need time to "otherwise prepare for trial" [*Id.* at 2].  Thus, the Court found that not granting a continuance would both "result in a miscarriage of justice and deny counsel for Defendant the reasonable time needed to effectively prepare, accounting for the exercise of due diligence" [*Id.* (citing 18 U.S.C. § 3161(h)(7)(B)(i)–(iv))].

Relatedly, while defendant asserts that no new additional charges were added for either of his codefendants in the Superseding Indictment, the Court would underscore several changes that could have impacted the landscape of plea negotiations and the time needed to pursue such negotiations.[4]  First, the Superseding Indictment broadened the time frame of the conspiracy from approximately 20 days to 201 days [*See* Doc. 3, p. 1; Doc. 102, p. 1].  Second, heroin was added as a controlled substance involved in the conspiracy while any mention of methamphetamine was eliminated [*See* Doc. 3, pp. 2–3; Doc. 102, pp. 2–3].  Lastly, and specifically for codefendant Myers, the Superseding Indictment altered the potential imprisonment range he was facing under the original Indictment in two ways.  For one, codefendant Myers was initially charged with several offenses which alleged violations of 21 U.S.C. § 841(b)(1)(A) [Doc. 3, pp. 1–3 (Counts One, Two, and

---

[4] While not mentioned explicitly in the Court's Memorandum and Order [Doc. 127], the Court finds the differences between the original Indictment [Doc. 3] and the Superseding Indictment [Doc. 102] to be intertwined with the Court's consideration of granting a continuance to allow for time for codefendants' counsel to continue plea negotiations.

Three)]. The statutory penalty of imprisonment for a violation of 21 U.S.C. § 841(b)(1)(A) is "not less than 10 years or more than life." In the Superseding Indictment, however, codefendant Myers is not charged with such a violation [*See* Doc. 102]. Without such charge, the highest penalty of imprisonment codefendant Myers faces in the Superseding Indictment comes under a violation of 21 U.S.C. § 841(b)(1)(B), which is "not less than 5 years and not more than 40 years." Thus, from Indictment to Superseding Indictment, the mandatory minimum term of imprisonment codefendant Myers was facing for his alleged offenses was reduced by five years. Secondly, the original Indictment alleged the knowing possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(2) [*See* Doc. 3, p. 3]. The statutory penalty of imprisonment for such offense is generally a mandatory minimum of five years, to be served consecutively with any other term of imprisonment imposed. *See* 18 U.S.C. §§ 924(c)(1)(A)(i), (D)(ii). In the Superseding Indictment, however, such charge is absent [*see* Doc. 102], meaning codefendant Myer's potential imprisonment range was undoubtedly reduced from the original Indictment.[5]

Furthermore, and what defendant neglects to mention in his objections, is that the Court, in its Memorandum and Opinion, noted that the government had filed an

---

[5] Forfeiture allegations against codefendant Myers in the original Indictment [*see* Doc. 3, pp. 3–5] were also absent in the Superseding Indictment.

There are other differences between the original Indictment and the Superseding Indictment, especially considering that codefendants Alison Grace and Prince Brown were later charged in another instrument, but mention of all the differences between such indictments is not needed here.

interlocutory appeal on September 10, 2024 [Doc. 120] and found that "[d]elay resulting from this appeal is fully excludable under the Speedy Trial Act" [Doc. 127, p. 2 (citing 18 U.S.C. § 3161(h)(1)(C))]. Defendant appears to overlook that, as mentioned in the R&R, he is "tied to the same speedy trial clock as that of his codefendants, and an exclusion that applies to one defendant applies to all codefendants" [Doc. 214, p. 16 (noting no motion for severance has been filed) (citing *United States v. Namer*, 149 F. App'x 385, 397 (6th Cir. 2005))]. *See United States v. Robinson*, 290 F. Supp. 2d 808, 817 (E.D. Mich. 2003) ("[T]he IAD also encompasses the same conditions and circumstances as the rules for excludable time under the Speedy Trial Act.").

Based on the above, the Court disagrees with defendant's apparent assertion that the length of the continuance granted here was neither reasonable nor necessary. Therefore, the Court would **OVERRULE** defendant's objection to the extent he argues that the fifth component of a continuance under Article IV(c) was not met here.[6]

### iii. Invocation of Speedy Trial Rights

Lastly, defendant argues that he did not, as the R&R concluded, "waive his rights to a trial within 120 days of his appearance before this Court" [Doc. 216, pp. 12–13]. Rather, defendant maintains that the "record clearly shows that from the time he was

---

[6] The Court would also emphasize, as the R&R made clear, that "the trial court need not 'always comply literally with every procedural requirement enunciated in Article IV(c) when the defendant requests a continuance'" [Doc. 214, p. 18 (quoting *United States v. Cardenas*, No. 3:16–00192, 2017 WL 77113, at *4 (M.D. Tenn. Jan. 9, 2017))]. Rather, such literal compliance is primarily necessitated "for continuances requested by the prosecution" [*Id.* (citations omitted)].

16

informed of the Federal Indictment and detainer lodged against him, [he] has persistently requested that he be given a speedy trial within the 120[-day] time limit" [*Id.* at 12].

This objection, the Court finds, is merely a restatement of an argument defendant previously presented to the magistrate judge [*See* Doc. 176, p. 3 ("The Defendant submits that he did not agree to a continuance of the trial date beyond the one hundred twenty days required by the IAD. Indeed, upon learning of the new trial date, the Defendant immediately filed a pro se Notice that he 'does not waive the one hundred twenty day time limit under Article IV'. . . . Additionally, on October 25, 2024, the Defendant filed a pro se Motion asking the Court to set a court date within the one hundred [and twenty] day time limit."); Doc. 199, p. 3 ("Defendant urges that he . . . did not consent to a continuance outside of the 120 day time period."); Doc. 218, p. 5 ([Defendant's] position . . . was he . . . didn't agree to the continuance.")]. *See Dawson*, 2020 WL 109137, at *1. Therefore, being as defendant's objection is improper here, *see id.*, the Court **OVERRULES** it.

## IV. Conclusion

For the reasons above, defendant's objections [Doc. 216] are **OVERRULED**. The Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 214] in whole and **DENIES** defendant's Motion to Dismiss for Violation of Interstate Agreement on Detainers [Docs. 176, 199].

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE