IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:23-CR-87-TAV-JEM |
| WAYNARD Q. WINBUSH, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

All pretrial motions have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or recommendation as appropriate. This case is before the Court on Defendant Waynard Winbush's pro se[1] Motion to Waive IAD['s] Anti-Shuttling Provision and Request a Return to the Sending State [Doc. 252] and his "Request and Notice" [Doc. 253], both asking for Defendant to return to the custody of the Tennessee Department of Corrections ("TCOC") to await his trial in this case. Defendant is charged with conspiring with named codefendants and unnamed others to distribute 400 grams or more of fentanyl and a quantity of heroin from November 1, 2021, through on or about May 20, 2022 [Doc. 102 pp. 1–2]. On September 19, 2024, Defendant was brought into federal custody from state custody on a writ [*See* Doc. 115; *see also* Doc. 214 pp. 4–5 & n.5, 13–14]. Defendant asks to return to state custody because (1) his presence in federal custody has disrupted his state rehabilitation programing, his accrual of sixteen days per month of "good time" credits, and his parole hearing [Doc. 252 p. 1] and (2) conditions in federal custody are "harsh" due to inadequate food, exercise time, and medical care [Doc. 253 p. 1].

---

[1] Defendant Winbush represents himself with the assistance of elbow counsel Attorney Ashlee Mathis [*See* Doc. 239 p. 5].

The Court **DENIES** Defendant's request to return to TDOC custody because the Interstate Agreement on Detainers ("IAD") does not apply in this case. But, even if it did, Defendant's return is not appropriate due to his need to prepare for his September 23, 2025 trial. The Court also finds Defendant has not shown that his conditions and care in federal custody are inhumane.

I.  **BACKGROUND**

The District Judge's Memorandum Opinion and Order of June 24, 2025 [Doc. 254 pp. 2–5 (incorporating the unopposed background from the Report and Recommendation)] and the undersigned's Memorandum and Order of August 11, 2025 [Doc. 269 pp. 2–6] fully set out the background in this case. Pertinent to this analysis, the Court reviews that

> [i]n September 2016, Defendant received a twenty-three-year sentence of incarceration for his convictions in Knox County Criminal Court for one count of conspiracy to possess Schedule I drugs with intent to sell in a school zone and one count of possession of Schedule II drugs with intent to sell in a school zone. On December 22, 2022, Governor Bill Lee commuted Defendant's sentence and declared him eligible for parole consideration. On March 2, 2023, prior to a parole hearing on his 2016 convictions, the State of Tennessee indicted Defendant for two counts of conspiracy to possess one hundred fifty (150) grams or more of a substance containing fentanyl with intent to deliver from May 9 through 21, 2022 ("the 2023 state case").

[Doc. 254 p. 3 (quoting Report and Recommendation, Doc. 214 p. 2) (omitting internal citations and footnotes)].

On August 21, 2024, while Defendant was awaiting trial in the 2023 state case, a federal Grand Jury returned a Superseding Indictment, adding Defendant Waynard Winbush to the drug conspiracy alleged in Count One, charging him with conspiring with Antoine Winbush, Tarius Myers, with Alison Grace and Prince Brown both charged in another instrument, and with unnamed others to distribute fentanyl and heroin from November 1, 2021, through on or about May 20, 2022, in violation of 21 U.S.C. §§ 846 and 841(a)(1) [Doc. 102 pp. 1–2]. Count One

2

Case 3:23-cr-00087-TAV-JEM  Document 272  Filed 08/19/25  Page 2 of 10
PageID #: 1419

further charges that the amount of controlled substances attributable to Defendant and Antoine Winbush "as a result of their own conduct and the conduct of other conspirators reasonably foreseeable to them is 400 grams or more of . . . fentanyl, a Schedule II controlled substance, and a quantity of heroin, a Schedule I controlled substance, thereby making the offense punishable under" 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(C) [*Id*.]. An arrest warrant for Defendant issued the following day [*See* Doc. 124].

"On September 6, 2024, the Knox County Criminal Court dismissed Defendant's pending 2023 state charges, noting that Defendant had been 'federally indicted on [the] same charges'" [Doc. 254 p. 3]. Defendant was brought into federal custody on a writ and appeared before the undersigned for an initial appearance and arraignment on September 19, 2024 [*See id*.]. The undersigned appointed Attorney Nate Evans to represent Defendant and told Defendant and Mr. Evans that it had continued the October 1, 2024 trial date on a codefendant's motion the previous day and would email Mr. Evans along with counsel for the other parties to schedule the new trial date [*Id*. at 3–4]. With the agreement of counsel, including Mr. Evans who stated Defendant Winbush consented to the continuance, the Court continued the trial to February 11, 2025, a date more than one hundred and twenty days from Defendant Winbush's first appearance in the case [*Id*. at 4].

Defendant Winbush, who twice requested and received substitute counsel, litigated a motion to dismiss the charges for a violation of the speedy trial provision of the IAD [*Id*. at 4–5]. The undersigned recommended denial of the motion, finding that the IAD did not apply in this case because no federal detainer was in place when Defendant came into federal custody; instead, he was brought into federal custody on a writ, which does not trigger the IAD [Doc. 214 pp. 9–14]. The undersigned also found that if the IAD applies, the February 11, 2025 trial date did not violate the IAD's speedy trial provision [Doc. 214 pp. 9, 14–19]. The District Judge accepted and

3

adopted the Report and Recommendation and denied Defendant's motion to dismiss for a violation of the IAD [Doc. 254 pp. 1, 17].

While his motion to dismiss for IAD violations was pending, Defendant filed pro se motions seeking to return to TDOC custody while awaiting his trial [Docs. 202, 205 & 221]. The undersigned denied these motions as procedurally improper because Defendant was represented by counsel and could not file pro se motions in his own behalf [Doc. 204 p. 1; Doc. 207; Doc. 224 p. 1]. Additionally, the undersigned denied Defendant's request to represent himself on the issue of waiving the anti-shuttling provision, while otherwise represented by counsel [Doc. 224 p. 2].

On May 20, 2025, the undersigned permitted Defendant Winbush to represent himself and appointed Ms. Mathis to serve as elbow counsel [Doc. 239 p. 5]. On June 18, 2025, Defendant filed a pro se Motion to Waive IAD['s] Anti-Shuttling Provision and Request a Return to the Sending State [Doc. 252] and his Request and Notice [Doc. 253]. Defendant seeks to return to state custody because (1) his presence in federal custody has disrupted his state rehabilitation programing, his accrual of sixteen days per month of "good time" credit, and his quest for parole [Doc. 252 p. 1]. He argues that he needs significant time to prepare for trial due to delays in receiving discovery and his need to prepare and litigate pretrial motions [*Id*. at 2]. Defendant observes that he has requested funding for an investigator, may need to consult experts for trial, and is essentially restarting his case [*Id*. at 3]. Additionally, Defendant asserts that his requested return to TDOC custody is motivated by the "harsh conditions" in federal custody [Doc. 253 p. 1]. He summarily asserts that his rights under the Eighth Amendment are violated by the inadequate food, lack of any exercise, and absence of medical care at the jail [*Id*.]. Defendant contends that he has high blood pressure, chronic pain, "blurry vision," anxiety, and depression [*Id*. at 1–2]. Defendant observes that he has filed two prior "Request and Notice" documents raising the conditions at the jail [*Id*. at 1].

4

The Government objects to Defendant's return to TDOC custody, arguing that the parties are preparing for trial on September 23, 2025, and no evidence exists of any constitutional violations relating to the conditions of Defendant's confinement [Doc. 260 p. 3]. Regarding trial preparations, it asserts that it provided a new copy of discovery to elbow counsel "to ensure [D]efendant has access to all discovery in the possession of the United States" [*Id*. at 2]. The Government maintains that "the conditions at the Knox County Detention Center [("KCDC"), where Defendant is detained,] appear to be humane and in compliance with all applicable laws" [*Id*. at 3]. It observes that the KCDC is inspected annually, including most recently on January 16, 2025, when inspectors "confirm[ed] the federal pre-trial inmates were being provided adequate food, clothing, shelter, and medical care" [*Id*.]. Counsel for the Government also confirmed with the United States Marshals Service that a medical provider was treating Defendant Winbush's medical complaints, including his chronic pain and blood pressure [*Id*.].

In his reply filed on July 14, 2025, Defendant maintains his request to waive the IAD's anti-shuttling provision and to return to TDOC custody to make parole on his state convictions and to stop the violations of his rights under the IAD [Doc. 263 pp. 4, 7]. He says his parole hearing has been delayed three years due to state and federal detainers [*Id*. at 4]. Defendant again asserts that his continued detention in federal custody has deprived him of sixteen days each month of "good time credit" on his state sentence and rehabilitation programming available to him in the TDOC [*Id*.]. According to Defendant, these continuing IAD violations have affected his mental health by causing him "anxiety, depression[, and] frustration" [*Id*.]. Defendant alleges that now that he represents himself, he needs to consult with his investigator, to seek specific discovery, and may need to ask for a trial continuance in the future [*Id*. at 5].

This matter is now ripe for adjudication.

## II. ANALYSIS

"The [IAD] is a compact entered into by forty-eight states, the United States, and the District of Columbia to establish procedures for resolution of one jurisdiction's outstanding charges against another jurisdiction's prisoner." *United States v. Crozier*, 259 F.3d 503, 513 (6th Cir. 2001) (citing *New York v. Hill*, 528 U.S. 110, 111 (2000)). The United States and the State of Tennessee are parties to the IAD. *United States v. Battle*, No. 3:19-cr-00039, 2022 WL 128814, at *3 (M.D. Tenn. Jan. 12, 2022) (citing *United States v. Mauro*, 436 U.S. 340, 354–55 (1978) & Tenn. Code Ann. § 40-31-101). The IAD "has two purposes: (1) to minimize interference with the participation in programs of prisoner treatment and rehabilitation of persons serving sentences in one jurisdiction who have untried charges pending against them in another jurisdiction and (2) to expedite trial of such pending charges." *United States v. Roberts*, 548 F.2d 665, 669 (6th Cir. 1977). A prisoner awaiting trial on pending charges has not "entered into the life of the institution to which he has been committed for a term of imprisonment," and any rehabilitative programs offered to a pretrial detainee would necessarily be interrupted upon conviction and transfer to the institution where he will serve his sentence. *Id*. at 670.

"Once the United States has filed a detainer with another jurisdiction and has made a written request for temporary custody of the defendant, Article IV of the [IAD] imposes two significant requirements: (1) trial on the charges must commence within one hundred twenty days of the arrival of the prisoner into federal custody (the 'speedy trial' provision);[2] and (2) disposition of the pending charges must precede the return of the prisoner from federal to state

---

[2] The court may continue the one-hundred-twenty-day-period "for good cause shown in open court, the prisoner or his counsel being present[.]" 18 U.S.C. App. 2 § 2, Art. IV(c). Here, District Judge Varlan denied Defendant's motion to dismiss the charges for a violation of the IAD's speedy trial violation finding that the IAD does not apply to Defendant's case but, even if it did, no violation of the speedy trial provision occurred [Doc. 254 pp. 1, 17]. Thus, the IAD's speedy trial

6

Case 3:23-cr-00087-TAV-JEM   Document 272   Filed 08/19/25   Page 6 of 10
PageID #: 1423

custody (the 'anti-shuttling' provision)." *Crozier*, 259 F.3d at 513 (citing 18 U.S.C. App. 2 § 2, Art. IV(c) & (e)). Defendant Winbush seeks to waive the second requirement, the anti-shuttling provision of the IAD, so that he can return to TDOC to await trial in this case.

The undersigned finds that here, the IAD does not apply, but, if it did, Defendant's return to state custody is not appropriate.

### A. Applicability of the IAD

The Court has already found that the IAD does not apply in this case because Defendant Winbush came into federal custody on a writ and federal authorities did not have a detainer with the state of Tennessee at that time [Doc. 254 pp. 1, 17; Doc. 214 pp. 9–14]. Additionally, the FBI detainer lodged during the pendency of Defendant's 2023 state charges expressly disclaimed the application of the IAD [Doc. 214 p. 12]. In determining the detainer issue, the Court had no evidence that federal authorities lodged another detainer once Defendant's 2023 state charges were dismissed [*Id*. at 13]. Nor was any evidence introduced that KCSO transferred the FBI detainer to TDOC [*Id*.]. "Hence, the record before the Court [on Defendant's motion to dismiss for an IAD violation] reveals that there was no detainer lodged against Defendant that would trigger application of the IAD" [*Id*. at 14].[3] If the IAD does not apply in this case, then Defendant's willingness to waive the anti-shuttling provision is moot.

---

provision was not violated by the Court's continuance of Defendant Winbush's trial beyond the one-hundred-twenty-day period permitted by the IAD [*Id*. at 12–16].

[3] In his objections to the undersigned's Report and Recommendation, Defendant argued that his rights under the IAD attached when he began serving his state sentence and remain during the duration of his sentence, regardless of his transfer from TDOC to Knox County to face new state charges [Doc. 216 p. 10]. The District Judge found that even if Defendant could be considered to have the dual status of prisoner serving a state sentence and pretrial detainee on his 2023 state charges, this argument is moot because the trial was continued beyond the IAD time limitations for good cause [Doc. 254 p. 9].

7

Case 3:23-cr-00087-TAV-JEM  Document 272  Filed 08/19/25  Page 7 of 10
PageID #: 1424

## B. Propriety of Waiver

The anti-shuttling provision of the IAD is strictly construed. *Alabama v. Bozeman*, 533 U.S. 146, 156 (2001) (finding one-day violation of anti-shuttling provision not "*di minimis*" considering the IAD's "absolute language" prohibiting shuttling between states). Even so, a defendant may waive the anti-shuttling provision and be returned to the sending state, if the waiver is knowingly and voluntarily made. *United States v. Eaddy*, 595 F.2d 341, 345 (6th Cir. 1979) ("In all cases where a prisoner is aware of and understands the provisions of Article IV, as well as his rights thereunder, a prisoner can waive those rights, so long as the waiver is voluntary." (footnote and citation omitted)).

Defendant Winbush asks to waive the anti-shuttling provision of the IAD to take advantage of rehabilitative and other benefits[4] available in state prison and because he objects to "harsh conditions," specifically poor food, lack of exercise time, and absence of medical care while in federal custody at the Knox County Detention Center [Doc. 253 p. 1]. He asserts without explanation or support that these harsh conditions violate his rights under the Eighth Amendment [*Id.*].

Defendant fails to demonstrate that his conditions of confinement while in federal custody are constitutionally inadequate or inhumane. The Eighth Amendment, which protects against cruel and unusual punishment, "does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted and modified). Thus, prison officials have a constitutional duty to "provide humane conditions of confinement" by "ensur[ing]

---

[4] Defendant notes his concern that his parole hearing on his state convictions has been delayed multiple times while he has been in federal custody [*See* Doc. 252 p. 1].

8

that inmates receive adequate food, clothing, shelter, and medical care" and by "tak[ing] reasonable measures to guarantee the safety of the inmates[.]" *Id*. (citations omitted and modified). "While the Eighth Amendment does not apply to pretrial detainees, the Fourteenth Amendment does apply to pretrial detainees and offers guarantees similar to those found under the Eighth Amendment." *Anderson v. Theibert*, No. 16–4020, 2017 WL 3140581, at *3 (6th Cir. Feb. 27, 2017) (citation omitted).

Here, the Defendant presents no support for his claims that the food and medical care at the Knox County Detention Center are inadequate, much less inhumane. In contrast, the Government asserts that the facilities housing federal pretrial detainees are inspected annually and that the Knox County Detention Center was last inspected on January 16, 2025 [Doc. 260 p. 3]. It contends that the January inspection "confirm[ed] the federal [pretrial] inmates were being provided adequate food, clothing, shelter, and medical care" [*Id*.]. Also, the Supervisory Deputy U.S. Marshal in Knoxville confirmed Defendant "had been seen by a medical provider and is being treated for multiple complaints, to include chronic pain and blood pressure" [*Id*.]. When Defendant filed these pro se motions, the undersigned also checked with the United States Marshals Service, which contacted the jail and confirmed that Defendant is receiving medical treatment, including medication, for high blood pressure and NSAID's for his chronic pain.

Defendant's desire to waive the anti-shuttling provision of the IAD is not the only interest at stake. The Government opposes Defendant's transfer to TDOC when the trial is only five weeks away. Defendant acknowledges that he has much to do to prepare to represent himself at trial.[5]

---

[5] Defendant lists preparing additional pretrial motions as a task he must complete before trial [Doc. 252 p. 2]. Defendant's last deadline for filing pretrial motions expired on February 4, 2025 [Doc. 198]. No more pretrial motions, other than motions in limine, may be filed in this case without a request for leave to file the motion demonstrating good cause. *See* Fed. R. Crim. P. 12(c).

9

Defendant's transfer to state custody at this time would impede his ability to confer with his investigator and to prepare for trial.

In sum, Defendant cannot waive the IAD anti-shuttling provision because the IAD does not apply in this case. If the IAD applies, however, Defendant's return to state custody is not appropriate because he is representing himself at trial, which is five weeks away. Moreover, the information before the undersigned shows that Defendant's conditions of detention are adequate and humane.

### III. CONCLUSION

The Interstate Agreement on Detainers does not apply in this case. Even if it did, however, Defendant's return to TDOC to await trial is not appropriate due to his need to prepare for trial in which he represents himself. Moreover, Defendant is receiving adequate care, to include medical care, while in federal custody.

Accordingly, the Court **ORDERS** as follows:

(1) Defendant's pro se Motion to Waive IAD['s] Anti-shuttling Provision and Request a Return to the Sending State [**Doc. 252**] and Defendant's pro se Request and Notice [**Doc. 253**] are **DENIED**;

(2) the trial of this case remains set for **September 23, 2025**; and

(3) the Clerk of Court is **DIRECTED** to mail a copy of this Memorandum and Order to Defendant Winbush at his place of detention.

**IT IS SO ORDERED**.

ENTER:

/s/ Jill E. McCook
Jill E. McCook
United States Magistrate Judge