IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:23-CR-87-TAV-JEM |
| | ) | |
| WAYNARD Q. WINBUSH, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or recommendation as appropriate. This case is before the undersigned on two pretrial motions by Defendant Waynard Winbush: (1) Omnibus Motion for All Exculpatory Evidence [and] Impeachment Evidence ("Omnibus Motion") [Doc. 266] and Motion to Dismiss [for] Violation of Due Process Protections Act Federal Rules of Criminal Procedure Rule 5(f)(1)–(2) ("Rule 5(f) Motion") [Doc. 279]. Defendant is charged with conspiring with named codefendants and unnamed others to distribute 400 grams or more of fentanyl from November 1, 2021, through on or about May 20, 2022, in violation of 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(C), and 846 (Count One) [Doc. 102 pp. 1–2].

Defendant, who represents himself,[1] asks the Court to compel the Government to disclose all exculpatory and impeachment evidence [Doc. 266 pp. 1–3]. Defendant also asks the Court to sanction the Government by dismissing the charges or imposing another appropriate sanction for the prosecution's failure to disclose exculpatory evidence, specifically that Detective John Sharp

---

[1]     On May 20, 2025, the Court granted Defendant's request to represent himself and appointed elbow counsel Attorney Ashlee Mathis [Doc. 239 pp. 4–5].

testified at a state-court hearing that coconspirator Prince Brown was not arrested when intercepted with a large quantity of fentanyl on May 10, 2022 [Doc. 279 pp. 1–5]. The Government responded in opposition to both motions [Docs. 275 & 287], and Defendant filed replies [Docs. 282 & 292].

For the reasons set forth below, the Court **DENIES** both motions [**Docs. 266 & 279**].

## I.  EXCULPATORY & IMPEACHMENT EVIDENCE [Doc. 266]

In his Omnibus Motion for All Exculpatory Evidence [and] Impeachment Evidence, Defendant asks the Court to compel the Government to disclose all exculpatory and impeachment evidence [Doc. 266 p. 1]. Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), Defendant seeks the following information, which he contends is exculpatory evidence: prior statements from indicted and unindicted coconspirators, "perjured testimony" in the possession of law enforcement, *Brady* evidence that "proves a known drug supplier" for any codefendant, any fingerprints taken from seized drugs, and exculpatory evidence from codefendants' cell phones, email, text messages, or Facebook accounts [*Id.* at 2–3]. Defendant also asks the Court to compel the prosecution to disclose impeachment evidence pursuant to *Brady* and *Giglio v. United States*, 405 U.S. 150 (1972) [*Id.* at 1, 3]. In this regard, he requests his and his codefendants' oral, written, or recorded statements; the identity of the Government's trial witnesses and physical evidence; the criminal history of codefendants and their "prior bad acts"; information on lineups, show-ups, and photographic or voice identifications; character and impeachment evidence for any prosecution witness such as pending criminal charges, terms of parole or probation, evidence undermining expertise, a reputation for untruthfulness, or bias; and any promises or inducements made to prosecution witnesses [*Id.* at 4–5]. Defendant further asks that the Court require the Government to review the personnel files of all law enforcement officers and agents and employees involved

2

in the investigation of this case and to disclose all exculpatory information, impeachment evidence, and evidence of dishonesty within those files [*Id.* at 6–7].

The Government responds that it "intend[s] to provide all required documents at the appropriate time" [Doc. 275 p. 3]. It asserts that it has provided all exculpatory evidence and that it will provide the statements of indicted codefendants and its witnesses after the witness testifies at trial in compliance with the Jencks Act [*Id.*]. Regarding personnel files, the Government maintains that although it "does not . . . [have] the obligation to inspect every personnel file requested by the defendant, [it] does intend to comply with *Giglio v. United States*, 405 U.S. 150 (1972), and [that it will] inquire and subsequently disclose any information material to the defense and impeachment" if relevant to any of its witnesses [Doc. 275 pp. 3–4].

In reply, Defendant denies that the Government has provided all exculpatory or impeachment evidence [Doc. 282 pp. 8–10, 12]. He contends the following items remain outstanding: the recording of Alison Grace's interview by Task Force agents, Alison Grace's prior criminal history, Alison Grace's downward departure agreement, Alison Grace's cell phone records, Alison Grace's "known drug supplier," the recording of Prince Brown's interview at the time of his arrest, Prince Brown's criminal history and prior bad acts, and Prince Brown's downward departure agreement [*Id.* at 9]. Defendant also maintains that the Government has violated *Brady* by not providing before the pretrial motion deadline the testimony of Detective John Sharp that Prince Brown was not arrested when caught with fentanyl but was allowed to go free [*Id.* at 10]. He contends that this testimony is exculpatory because Detective Sharp's actions in not arresting Brown violated Federal Rule of Criminal Procedure 5(a) [*Id.*]. Defendant insists that pursuant to *Giglio*, the Government has an obligation to disclose the personnel files of law enforcement officers before trial [*Id.* at 12]. Defendant reasserts his request for all information

3

listed in his motion [*id*. at 11, 13] and calls upon the undersigned to construe his arguments liberally because he represents himself [*id*. at 13].

The discovery available in criminal cases is generally limited to that provided in: (1) Federal Rule of Criminal Procedure 16; (2) the Jencks Act, 18 U.S.C. § 3500; and (3) the doctrine set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The government violates due process when it withholds from a defendant favorable evidence that is "material either to guilt or punishment." *Id*. at 87. This rule also extends to evidence that could be used to impeach the credibility of a government witness. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972) (holding that impeachment evidence falls within *Brady* "[w]hen the reliability of a given witness may well be determinative of guilt or innocence").

Rule 16 requires the government to disclose, upon a defendant's request, any oral or written statements of the defendant; the defendant's prior record; certain documents or tangible evidence within the government's possession, custody or control; reports of examinations or tests; and a summary of any expert witness testimony. Fed. R. Crim. P. 16(a). "The Jencks Act generally requires the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at a trial." *United States v. Short*, 671 F.2d 178, 185 (6th Cir. 1982). The government is required to produce the statement only after the witness has testified on direct examination. 18 U.S.C. § 3500(a).

In *United States v. Presser*, the Sixth Circuit found that "so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial," the defendant's constitutional rights are not violated. 844 F.2d 1275, 1283 (6th Cir. 1988). Further, the Sixth Circuit observed that "while the *Brady* rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or

4

punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure." *Id*. at 1281 (internal citations omitted).

In this case, the Court's Order on Discovery and Scheduling provides:

> The government shall reveal to the defendant and permit inspection and copying of all information and material known to the government which may be favorable to the defendant on the issues of guilt or punishment within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 97 (1976) (exculpatory evidence), and *United States v. Bagley*, 473 U.S. 667 (1985) (impeachment evidence). Timing of such disclosure is governed by *United States v. Presser*, 844 F.2d 1275 (6th Cir. 1988).

[Doc. 14 ¶ E].[2] Thus, the Court has already ordered the Government to disclose exculpatory and impeachment evidence.

Moreover, the Government states that it has provided all exculpatory evidence in this case [Doc. 275 p. 3]. Also, it states, in response to another pretrial motion, it provided in discovery the audio and video recordings it will use at trial to prove that Defendant "was directing members of the drug organization to carry out the drug trafficking business from a cell[]phone while he was in state prison" [Doc. 283 p. 4]. At the hearing on September 9, 2025, elbow counsel confirmed that she received a thumb drive containing all discovery shortly after her appointment in June 2025 and that she reviewed it with Defendant [Doc. 281 p. 2]. Regarding additional information requested by Defendant, Assistant United States Attorney Brent Jones stated that he would provide Jencks Act materials, such as the statements of cooperating witnesses, in compliance with the Court's Order on Discovery and Scheduling [*Id*.]. He said that he provided the extraction from Codefendant Alison Grace's cell phone one and one-half weeks prior to the hearing but the four

---

[2]     The Court entered its Order on Discovery and Scheduling on August 31, 2023, following the initial appearance of the first defendant to appear in this case [*See* Doc. 14]. Although the Court entered this Order more than a year before Defendant Waynard Winbush entered the case, this Order governs all defendants in the case.

other cell phones in the Government's possession could not be extracted [*Id*.].[3] The Court need not compel discovery where it appears the Government has met its discovery obligations under both Rule 16 and *Brady*, as well as the Court's scheduling order.

Defendant argues the Government has violated its *Brady* obligations because it did not disclose prior to the pretrial motion deadline the testimony of Detective John Sharp[4] regarding his decision not to arrest Codefendant Prince Brown. Defendant argues Detective Sharp's testimony is exculpatory because Detective Sharp's actions in not arresting Brown violated Federal Rule of Criminal Procedure 5(a) [Doc. 282 p. 10]. He maintains that if he had received this information prior to the motion deadline, he could have timely filed a motion to suppress any statements of Prince Brown and any evidence seized on the day of Brown's interception and release due to law enforcement's violation of Rule 5(a), which requires that an arrested individual be brought before a judge without unnecessary delay [*See* Doc. 273 p. 22; *see also* Doc. 289 p. 7].[5] He contends that if this evidence is suppressed, the Government will have no evidence with which to convict him [Doc. 262 p. 5].

---

[3]     Thus, it appears the Government has provided evidence relevant to Defendant's specific request for the evidence from cell phones of codefendants.

[4]     Defendant attaches to his Rule 5(f) motion a portion of what appears to be an unofficial transcript of a hearing regarding the state charges for Codefendant Antoine Winbush [Doc. 279-1]. Defendant states that he received this transcript from his elbow counsel on August 15, 2025 [Doc. 279 p. 4; Doc. 292 p. 4].

[5]     Defendant discusses the prejudice from the Government's failure to disclose Detective Sharp's testimony prior to the motion deadline in his motion alleging violations of his speedy trial rights [Doc. 273 p. 22]. In his reply related to that motion, Defendant contends that the Rule 5(a) violation requires suppression of physical evidence as well as statements and testimony [Doc. 289 p. 7]. The Court relies on these arguments to explain Defendant's position on the materiality of Detective Sharp's testimony.

6

"There are three components of a *Brady* violation: '[T]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Bies v. Sheldon*, 775 F.3d 386, 397 (6th Cir. 2014) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). "The third component is sometimes referred to as the "materiality" requirement." *Id*. "Evidence is material for purposes of *Brady* if the undisclosed evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id*. at 398 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

As an initial matter the Court questions whether the testimony of Detective Sharp is favorable to Defendant. Defendant fails to explain how he has standing to challenge any alleged delay in Brown's initial appearance. In other words, even if Brown could have moved to suppress his statements or the fentanyl for use against him based upon a Rule 5(a) argument, Defendant does not show that he can make those arguments on Brown's behalf.[6] Moreover, given the facts before the undersigned, it does not appear that officers arrested Brown and, thus, the requirement that he be taken before a judge without unnecessary delay was not triggered. Nevertheless, Defendant now has the testimony of Detective Sharp well in advance of trial. *See Presser*,

---

[6]    In his Motion to Produce Grand Jury Transcripts, Defendant relies on *Anderson v. United States*, 318 U.S. 350 (1943), to argue that a Rule 5(a) violation resulting in suppression of a defendant's confession is applied to his codefendants who did not confess [Doc. 295 pp. 5–8]. In *Anderson*, the Supreme Court found the confessions of six of the eight coconspirators were inadmissible because the defendants were held in state custody, questioned for several days, and confessions obtained before appearing before a federal judge. 318 U.S. at 356. The Supreme Court also reversed the convictions of the two defendants who did not confess because "the prosecution rested principally on these confessions and the testimony of an informant, . . . [t]he incriminating statement of each [defendant] implicated all others," cross-examination revealed the identities of the other defendants implicated in each confession, and the trial judge did not instruct the jury to consider the confessions only as to the defendant who made them. *Id*. at 356–57. The circumstances of *Anderson* are not present here.

7

844 F.2d at 1283; *see also United States v. Spry*, 238 F. App'x 142, 147 (6th Cir. 2007) ("Generally speaking, *Brady* does not apply to delayed disclosure, but only to a complete failure to disclose." (citation omitted)). Nor does it matter that Defendant obtained this information from his elbow counsel, rather than from the Government. "No *Brady* violation exists . . . where the evidence is available to defendant from another source[.]'" *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir. 1986)).

Regarding Defendant's specific requests for outstanding information, the Government is generally not required to disclose its witnesses or an exhibit list before trial. *United States v. Prince*, 618 F.3d 551, 562 (6th Cir. 2010) (providing that "Rule 16 does not entitle a defendant to pretrial disclosure of the government's exhibit list"); *United States v. Turner*, 91 F. App'x 489, 491 (6th Cir. 2004) (holding a "defendant in a non-capital case . . . is not entitled to know in advance of trial who will testify for the government" (citation omitted)). Additionally, the Government states that it provided in discovery the audio and video recordings it will use at trial to show Defendant's involvement in the charged conspiracy. Thus, the Government has identified and produced the most salient evidence it intends to use against Defendant.

The Government is not yet required to provide witness statements, including the statements of Codefendants Alison Grace and Prince Brown. "[N]o statement or report in the possession of the United States which made by a Government witness or prospective Government witness . . . shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a)). Thus, the Government is not required to produce these statements prior to trial. The Court, however, "strongly encourage[s the Government] to reveal Jencks Act materials to defense counsel as soon as possible and well before the testimony of government witnesses in order to avoid undue interruptions of trial[]" [Doc. 14

¶ O]. This encouragement is emphasized where, as here, Defendant represents himself and will likely need the assistance of elbow counsel to review recordings.

Likewise, Defendant's requests for impeachment evidence relating to Government witnesses, such as criminal histories or promises and inducements, including those for Codefendants Grace and Brown, are covered by the Court's scheduling Order. As stated above, the Order directs the Government to disclose impeachment evidence [Doc. 14 ¶ E]. More specifically, the Order also requires that "[t]he government shall obtain the record of prior convictions, if any, of any witness who will testify for the government at trial so that the record will be available to the defendant at trial" [*Id*. ¶ F]. The timing of this disclosure is governed by Sixth Circuit precedent in *Presser*, which is to say the Government must give Defendant impeachment material in time for him to use it at trial [*See id*. ¶ E]. *Presser*, 844 F.2d at 1283.

Defendant also seeks any identification evidence, such as voice identification or fingerprints. Again, the Court's scheduling Order controls, requiring the Government to disclose whether Defendant was identified in any "identification proceeding" [*id*. ¶ G] and to provide copies of fingerprints identified by a Government expert as belonging to Defendant [*id*. ¶ K]. Relatedly, the Government must disclose any experts and expert information at least three weeks before trial [*Id*. ¶ L].

Finally, Defendant's request for all personnel files of law enforcement officers, agents, and employees involved in the investigation of this case is overly broad and unavailing because Defendant fails to show the materiality of this evidence. *United States v. Valentine*, No. 94-6195, 1995 WL 390322, at *4 (6th Cir. June 30, 1995) (observing defendant is not entitled "to officers' personnel files by simply asserting the hope that he could find evidence to 'cast doubt on their credibility'" (quoting *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992), *abrogated*

9

*on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999))). Nevertheless, the Government intends to inquire about and disclose material information related to its trial witnesses [Doc. 275 p. 4].

In sum, the Court's Order on Discovery and Scheduling already requires much of the information sought by Defendant, although the Government is not yet required to disclose Jencks Act or impeachment information. Accordingly, the Court **DENIES** Defendant's Omnibus Motion for All Exculpatory Evidence [and] Impeachment Evidence [**Doc. 266**].

## II.     SANCTION FOR DUE PROCESS VIOLATION [Doc. 279]

Defendant also moves to dismiss the charge or for another appropriate sanction because he contends the Government failed to produce exculpatory evidence, specifically the testimony of Detective John Sharp that he did not arrest Codefendant Prince Brown at the time he intercepted Brown with fentanyl on May 10, 2022 [Doc. 279 pp. 1, 3–5; Doc. 292 pp. 4–5]. Defendant states that instead he received Detective Sharp's testimony from his elbow counsel on August 15, 2025 [Doc. 279 p. 4]. He argues that because the information that Brown was not arrested "did not come from the government," the Due Process Protection Act as codified in Federal Rule of Criminal Procedure 5(f)(1) was violated [*Id*. at 8].

The Due Process Protection Act of 2020 amended Rule 5 of the Federal Rules of Criminal Procedure "to 'issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor.'" *United States v. Carter*, No. 1:20-cr-62, 2022 WL 1292121, at *2 (S.D. Ohio Apr. 29, 2022) (quoting Pub. L. No. 116-182, 134 Stat. 894 (2020)). Specifically, Rule 5(f)(1) provides that "[i]n all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to the prosecution and defense counsel that confirms the disclosure

obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law." The purpose is to "confirm[] the government's obligations under *Brady*." *Carter*, 2022 WL 1292121, at *3.

As explained above in Section I., the Court finds that the Government has not committed a *Brady* violation regarding Detective Sharp's testimony.[7] As such, no sanctions are appropriate in this case, and the undersigned **DENIES** Defendant's motion [**Doc. 279**].

The Court notes, however, that a written Due Process Protections Act Order has not been entered with respect to Defendant Waynard Winbush. Yet, the recording of Defendant's September 19, 2024 initial appearance reflects that, at the end of the hearing, the undersigned gave the Rule 5(f) admonition with both the prosecutor and defense counsel present, ordering the Government to comply with its *Brady* obligations and advising that the failure to do so in a timely manner could result in the exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, or other sanctions [*See* Doc. 115, Minutes (certifying that "the official record of this proceeding is an audio file")]. Also, as the Government points out [Doc. 287 p. 1], the Court entered such written orders following the initial appearances of Codefendants Tarius Myers [Doc. 15], Antoine Winbush [Doc. 17], Prince Brown [Doc. 36], and Alison Grace [Doc. 46]. And the Court's Order on Discovery and Scheduling reminds the parties of the Government's obligation under *Brady* [Doc. 14 p. 3]. The Court now **DIRECTS** the Clerk of Court to enter a Due Process Protections Act Order with respect to Defendant Waynard Winbush.

---

[7]    Defendant also argues that the Government commits ethical violations by not acquiescing to his theory that Detective Sharp's testimony is exculpatory evidence [Doc. 292 pp. 6–8]. Again, the Court finds that the Government has not committed a *Brady* violation regarding this testimony.

11

## III. CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

1. Defendant's Omnibus Motion for All Exculpatory Evidence [and] Impeachment Evidence [**Doc. 266**] is **DENIED**;

2. Defendant's Motion to Dismiss [for] Violation of Due Process Protection Act Federal Rule of Criminal Procedure Rule 5(f)(1)–(2) [**Doc. 279**] is **DENIED**;

3. the Clerk of Court is **DIRECTED** to enter a Due Process Protections Act Order with respect to Defendant Waynard Winbush; and

4. the Clerk of Court is **ORDERED** to mail a copy of this Memorandum and Order to Defendant at his place of detention.

**IT IS SO ORDERED**.

ENTER:

Jill E. McCook
United States Magistrate Judge

12